# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY ____KP____ D.C.
Jun 15, 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 15, 2022

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 21-12655-AA
Case Style: USA v. Cheston Philpot
District Court Docket No: 0:20-cr-60086-RAR-1

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12655

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHESTON KONTRAS PHILPOT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cr-60086-RAR-1

_____

JUDGMENT

ISSUED AS MANDATE:  06/15/2022

2                                                                    21-12655

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: May 16, 2022

For the Court: DAVID J. SMITH, Clerk of Court

[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 21-12655

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

                                                       Plaintiff-Appellee,

*versus*

CHESTON KONTRAS PHILPOT,

                                                       Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cr-60086-RAR-1

_____

Case 0:20-cr-60086-RAR   Document 88   Entered on FLSD Docket 06/15/2022   Page 5 of 15
USCA11 Case: 21-12655   Date Filed: 05/16/2022   Page: 2 of 10

2                    Opinion of the Court                    21-12655

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Cheston Philpot appeals the denial of his motion to suppress evidence of the firearms and ammunition he later was convicted of possessing, in violation of 18 U.S.C. § 922(g)(1). He contends that suppression was required because the evidence was the product of an unlawful seizure at a casino in Hollywood, Florida, while he was working private security. In denying the motion to suppress, the district court found that his initial encounter with police was consensual, so Philpot had not been seized when he admitted to possessing a concealed gun, which provided reasonable suspicion to conduct a brief detention and patdown for weapons. After careful review, we affirm.

I.

The essential facts are largely undisputed. On February 1, 2020, during the weekend of the Super Bowl, law-enforcement officers patrolling the Seminole Hard Rock Hotel and Casino observed an individual, later known to be Philpot, wearing a black shirt, black pants, a black backpack, and a silver security enforcement badge. The badge was not recognized as one affiliated with any local or federal law-enforcement agency or with casino security.

Detective Tammy McConnell of the Seminole Police Department approached Philpot, introduced herself, and asked to

Case 0:20-cr-60086-RAR   Document 88   Entered on FLSD Docket 06/15/2022   Page 6 of 15
USCA11 Case: 21-12655   Date Filed: 05/16/2022   Page: 3 of 10

21-12655               Opinion of the Court                3

speak with him for a few minutes in a conversational tone. McConnell was wearing a modified uniform, including a polo shirt with an embroidered badge, with a holstered firearm. Philpot said "yes," and McConnell asked him to step near the entrance of the comedy club where there was less noise and less of a crowd. He did so. Detective Dan McGillicuddy, who was in plain clothes, arrived soon after and stood just behind Philpot. McGillicuddy noticed something pushing through the material of Philpot's backpack that looked to him like the muzzle of a firearm. He tried to alert McConnell, but she missed his hand gesture.

Detective McConnell began by asking Philpot about his security badge. Philpot explained that he was a bodyguard and was guarding a woman that evening. McConnell then asked Philpot for identification, and he produced a work identification that reflected he was an adult entertainer bouncer. When asked if he carried a gun, Philpot said "yes" before saying "no." McConnell followed up by asking if he had a concealed-weapons permit. Philpot said he did, but it was in his car. McConnell then asked for additional identification, and Philpot produced his Georgia driver's license, which McConnell ran through dispatch. No warrants appeared, and dispatch was unable to confirm whether Philpot had a valid concealed-weapons permit, because—according to Philpot—the permit had been issued by the state of Georgia, not Florida. McConnell also instructed dispatch to check Philpot's criminal history, which came back negative.

After about four or five minutes of conversation, the female companion Philpot was guarding approached. Detective McConnell returned Philpot's license and called for backup on the radio. She then asked for consent to search his backpack. Philpot responded that he was "out of here" and began to quickly walk away from the area.

As Philpot walked away, Detective McGillicuddy told Detective McConnell that Philpot had a gun in his backpack and needed to be detained. McConnell radioed for uniformed officers, and both she and McGillicuddy, accompanied by a few other officers, began to follow Philpot, who left the casino. Several officers converged on Philpot, and McGillicuddy briefly put his hand on Philpot's backpack and immediately yelled "gun." McGillicuddy testified that, during his brief touch of the backpack, he felt a protrusion like the upper half of a rifle. A subsequent patdown search revealed a 9mm handgun on Philpot's waist in a holster. Officers then opened the backpack and found a Kel-Tec 5.56mm semi-automatic pistol, 16 rounds of 9mm ammunition, and 26 rounds of 5.56mm ammunition. A later criminal-history check revealed that Philpot had been convicted of a felony under an alias.

## II.

Philpot was charged by indictment with one count of possession of a firearm and ammunition after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). Before trial, he moved to suppress evidence of the firearms and ammunition, arguing that his encounter with police was a seizure without reasonable suspicion

Case 0:20-cr-60086-RAR   Document 88   Entered on FLSD Docket 06/15/2022   Page 8 of 15
USCA11 Case: 21-12655   Date Filed: 05/16/2022   Page: 5 of 10

21-12655                Opinion of the Court                5

and that the manipulation of his backpack was an unreasonable search. The government replied that the encounter was consensual at the outset and that reasonable suspicion to detain and frisk Philpot arose once he admitted to possessing a firearm.

The district court held a suppression hearing, at which the government called Detectives McConnell and McGillicuddy as witnesses and introduced surveillance videos from the Casino, among other evidence. The court then denied the motion to suppress in a written order. After making detailed findings of fact, which we have summarized above, the court reached legal several conclusions. First, it determined that the initial encounter between Detective McConnell and Philpot was consensual and did not implicate the Fourth Amendment. Second, it found that the officers had reasonable suspicion to detain and frisk Philpot once he admitted he was carrying a weapon. And third, it determined that Detective McGillicuddy's frisk and subsequent search of the backpack were justified, and that the evidence would have been admissible anyway as a search incident to arrest after a gun was found on Philpot's person. The district court later found Philpot guilty at a bench trial based on stipulated facts. Philpot appeals.

### III.

When reviewing the denial of a motion to suppress, we review the district court's factual determinations for clear error and the application of the law to those facts *de novo*. *United States v. Dixon*, 901 F.3d 1322, 1338 (11th Cir. 2018). All facts are construed in the light most favorable to the prevailing party. *Id.*

Case 0:20-cr-60086-RAR   Document 88   Entered on FLSD Docket 06/15/2022   Page 9 of 15
USCA11 Case: 21-12655   Date Filed: 05/16/2022   Page: 6 of 10

6                       Opinion of the Court                    21-12655

### IV.

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. Evidence obtained in violation of the Fourth Amendment ordinarily must be suppressed. *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011).

"A seizure under the Fourth Amendment happens when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003). A seizure triggers constitutional scrutiny and must be justified by either reasonable suspicion or probable cause, depending on the severity of the intrusion. *Jordan*, 635 F.3d at 1185. Reasonable suspicion of criminal activity—a less demanding standard than probable cause—justifies a brief, investigatory detention, while reasonable suspicion that a suspect is armed and dangerous justifies a protective patdown search for weapons. *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993).

But not all police questioning constitutes a seizure. *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006). Even without particularized suspicion, officers may approach individuals on the street or other public places, ask them questions if they are willing, ask for identification, and request consent to search—"provided they do not induce cooperation by coercive means." *United States v. Drayton*, 536 U.S. 194, 200–01 (2002). Such interactions are

Case 0:20-cr-60086-RAR Document 88 Entered on FLSD Docket 06/15/2022 Page 10 of 15
USCA11 Case: 21-12655 Date Filed: 05/16/2022 Page: 7 of 10

21-12655  Opinion of the Court  7

referred to as "consensual encounter[s]" that do not trigger Fourth Amendment scrutiny. *Jordan*, 635 F.3d at 1186.

To determine whether a seizure has occurred, we ask whether a "reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Drayton*, 536 U.S. at 202 (quotation marks omitted). If so, no seizure has occurred. *Id.* In making this determination, we examine the totality of the circumstances, including these factors: (1) whether the suspect's path is blocked; (2) whether identification is retained; (3) the suspect's age, education, and intelligence; (4) the length of the detention and questioning; (5) the number of police officers present; (6) whether weapons were displayed; (7) any physical touching of the suspect; and (8) the language and tone of the officers. *Jordan*, 635 F.3d at 1186. These factors are not exhaustive and are not meant to be applied rigidly. *Id.*

Here, the district court did not err in denying Philpot's motion to suppress. Contrary to Philpot's claim, the initial encounter with Detective McConnell was consensual under binding precedent. McConnell was permitted to approach Philpot in a public place and ask whether he would be willing to speak with her. *See Drayton*, 536 U.S. at 200–01. And McConnell did not employ any coercive means to induce Philpot's cooperation. *See id.*; *Jordan*, 635 F.3d at 1186. At that time, McConnell was alone, her gun was holstered, she used a conversational tone, and she did not touch Philpot. Philpot said "yes," and he agreed with McConnell's

Case 0:20-cr-60086-RAR Document 88 Entered on FLSD Docket 06/15/2022 Page 11 of 15
USCA11 Case: 21-12655 Date Filed: 05/16/2022 Page: 8 of 10

8 Opinion of the Court 21-12655

request to move to a less noisy and crowded area, which was nearby and in the same public area.

Once in front of the comedy club, Detective McConnell engaged Philpot in a brief dialogue—lasting no longer than five minutes—mainly about his badge and his job, and permissibly asked for identification. *See Drayton*, 536 U.S. at 200–01. McConnell's "language and tone were purely conservational in nature," according to the district court, and Philpot "was of suitable age, education, and intelligence." While another detective was stationed just behind Philpot, that factor does not weight heavily in the analysis. The other detective was in plain clothes and did not participate in the questioning, block Philpot's path, touch him, or take any action that could be construed as coercive. It's not even clear Philpot was aware of his presence.

While McConnell retained Philpot's driver's license, the district court correctly concluded that this factor did not tip the balance towards a seizure. Retention of documents such as a driver's license may be a significant factor weighing in favor of a seizure, *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984), but it is not dispositive on its own, *see, e.g., United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991) ("[E]ven though the defendant's driver's license may have been temporarily retained, a reasonable person, under the totality of the circumstances, would have believed he was free to leave."). And here, Philpot voluntarily gave his driver's license to McConnell, and she kept it for less than

Case 0:20-cr-60086-RAR   Document 88   Entered on FLSD Docket 06/15/2022   Page 12 of 15
USCA11 Case: 21-12655   Date Filed: 05/16/2022   Page: 9 of 10

21-12655                Opinion of the Court                9

five minutes. She also promptly returned the license once the woman whom Philpot was guarding arrived.

In any case, by the time Detective McConnell asked for and retained Philpot's driver's license, reasonable grounds to detain Philpot had arisen on suspicion that he was carrying a concealed weapon in violation of Florida law. *See* Fla. Stat. § 790.01(2) ("A person who carries a concealed firearm on or about his person commits a felony of the third degree."). The district court found, consistent with the testimony at the suppression hearing, that Philpot handed over his driver's license *after* he had admitted, and then tried to retract, that he was carrying a gun.[1] In *United States v. Lewis*, we held that an individual's "admission to carrying a concealed weapon" in Florida provides reasonable suspicion to justify a brief detention to investigate the crime of carrying a concealed weapon, notwithstanding that the individual may have a valid permit, which, we noted, is an affirmative defense and not an element of the offense. 674 F.3d 1298, 1304 (11th Cir 2012). As a result, McConnell was justified in detaining Philpot and retaining his driver's license to investigate whether his possession of the gun he admitted to possessing was lawful. *See id.* Plus, Philpot did not produce a valid permit for the gun.

---

[1] Meanwhile, Detective McGillicuddy observed what looked to him like—and what in fact turned out to be—the muzzle of a firearm pushing against the fabric of the backpack, which further supports the existence of reasonable suspicion.

Case 0:20-cr-60086-RAR   Document 88   Entered on FLSD Docket 06/15/2022   Page 13 of 15
USCA11 Case: 21-12655   Date Filed: 05/16/2022   Page: 10 of 10

10                     Opinion of the Court                 21-12655

In short, the totality of the circumstances shows little more than the typical societal pressures inherent in any citizen-police encounter, which is not sufficient to show that a seizure occurred. *See United States v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002) ("The societal pressure to stop and speak with law enforcement is not a sufficient restraint of liberty to raise the interaction to a level that requires constitutional protection."). And the officers possessed reasonable suspicion to detain and frisk Philpot once he admitted to carrying a concealed weapon. The district court properly denied suppression on these facts.

For these reasons, we affirm the denial of Philpot's motion to suppress and his resulting conviction.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 16, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 21-12655-AA
Case Style: USA v. Cheston Philpot
District Court Docket No: 0:20-cr-60086-RAR-1

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call T. L. Searcy, AA at (404) 335-6180.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion