UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60837-RAR
(20-CR-60086-RAR)

**CHESTON KONTRAS PHILPOT**,

    Movant,

v.

**UNITED STATES OF AMERICA**,

    Respondent.
_____/

## ORDER DENYING 28 U.S.C. § 2255 MOTION TO VACATE

**THIS CAUSE** comes before the Court on Movant Cheston Kontras Philpot's *pro se* Motion to Vacate under 28 U.S.C. § 2255. *See* Motion to Vacate ("Mot.") [ECF No. 1]. The Government has filed a Response to the Motion. *See* Response ("Resp.") [ECF No. 6]. Having reviewed the pleadings, Movant's criminal docket, and the applicable law, the Court finds that Movant has failed to demonstrate he is entitled to relief and **DENIES** the instant Motion.

## PROCEDURAL HISTORY

Movant was charged with being a felon in possession of two firearms and various rounds of ammunition in violation of 18 U.S.C. § 922(g). *See* Indictment, *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Mar. 18, 2020), ECF No. 3 at 1. The facts surrounding this prosecution stem from an encounter at the Seminole Hard Rock Hotel and Casino between Movant and members of the Seminole Police Department, which the Eleventh Circuit summarized as such:

> On February 1, 2020, during the weekend of the Super Bowl, law-enforcement officers patrolling the Seminole Hard Rock Hotel and Casino observed an individual, later known to be Philpot, wearing a black shirt, black pants, a black backpack, and a silver security enforcement badge. The badge was not recognized as one affiliated with any local or federal law-enforcement agency or with casino security.

Detective Tammy McConnell of the Seminole Police Department approached Philpot, introduced herself, and asked to speak with him for a few minutes in a conversational tone. McConnell was wearing a modified uniform, including a polo shirt with an embroidered badge, with a holstered firearm. Philpot said "yes," and McConnell asked him to step near the entrance of the comedy club where there was less noise and less of a crowd. He did so. Detective Dan McGillicuddy, who was in plain clothes, arrived soon after and stood just behind Philpot. McGillicuddy noticed something pushing through the material of Philpot's backpack that looked to him like the muzzle of a firearm. He tried to alert McConnell, but she missed his hand gesture.

Detective McConnell began by asking Philpot about his security badge. Philpot explained that he was a bodyguard and was guarding a woman that evening. McConnell then asked Philpot for identification, and he produced a work identification that reflected he was an adult entertainer bouncer. When asked if he carried a gun, Philpot said "yes" before saying "no." McConnell followed up by asking if he had a concealed-weapons permit. Philpot said he did, but it was in his car. McConnell then asked for additional identification, and Philpot produced his Georgia driver's license, which McConnell ran through dispatch.

No warrants appeared, and dispatch was unable to confirm whether Philpot had a valid concealed-weapons permit, because—according to Philpot—the permit had been issued by the state of Georgia, not Florida. McConnell also instructed dispatch to check Philpot's criminal history, which came back negative.

After about four or five minutes of conversation, the female companion Philpot was guarding approached. Detective McConnell returned Philpot's license and called for backup on the radio. She then asked for consent to search his backpack. Philpot responded that he was "out of here" and began to quickly walk away from the area.

As Philpot walked away, Detective McGillicuddy told Detective McConnell that Philpot had a gun in his backpack and needed to be detained. McConnell radioed for uniformed officers, and both she and McGillicuddy, accompanied by a few other officers, began to follow Philpot, who left the casino. Several officers converged on Philpot, and McGillicuddy briefly put his hand on Philpot's backpack and immediately yelled "gun."

McGillicuddy testified that, during his brief touch of the backpack, he felt a protrusion like the upper half of a rifle. A subsequent

> patdown search revealed a 9mm handgun on Philpot's waist in a holster. Officers then opened the backpack and found a Kel-Tec 5.56mm semi-automatic pistol, 16 rounds of 9mm ammunition, and 26 rounds of 5.56mm ammunition. A later criminal-history check revealed that Philpot had been convicted of a felony under an alias.

*United States v. Philpot*, No. 21-12655, 2022 WL 1537988, at *1–2 (11th Cir. May 16, 2022).

Given the facts surrounding Movant's arrest, defense counsel filed a motion to suppress all "physical evidence seized by law enforcement officers" and all "statements made by the defendant" during this February 1, 2020 incident. Motion to Suppress, *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Aug. 12, 2020), ECF No. 17 at 1. Defense counsel argued that "law enforcement had no reasonable suspicion to detain Mr. Philpot for investigative purposes because there were no articulable facts that criminal activity was afoot" and that all evidence deriving from this unlawful stop had to be suppressed under the "fruit of the poisonous tree" doctrine. *Id.* at 5–6 (citing *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963)).

After holding a lengthy hearing on the issue, the Court denied the motion to suppress. *See* Order Denying Motion to Suppress, *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Feb. 2, 2021), ECF No. 42. The Court found that: (1) Movant initial encounter with Detective McConnell "was consensual in nature and not protected by the Fourth Amendment[,]" *id.* at 7; (2) Detective McConnell gained reasonable suspicion to detain Movant "once [Movant] confirmed he was carrying a gun" during this consensual encounter, *id.* at 7–8; and (3) law enforcement had the right to pat-down Movant and search his backpack because they had "a reasonable suspicion that [Movant] was armed with a concealed weapon without a valid permit," *id.* at 11.

On May 3, 2021, the parties agreed to proceed by a bench trial. *See* Paperless Order Setting Bench Trial, *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. May 3, 2021), ECF No. 47 ("As agreed and discussed by the parties during the status conference held on May 3, 2021, this matter is hereby specially set for a Bench Trial[.]"). On the day of the bench trial, May 26, 2021, Movant

executed a written waiver of his right to a trial by jury. *See* Waiver of Jury, *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. May 26, 2021), ECF No. 53. The Court then engaged in a colloquy with Movant to ensure he was knowingly and voluntarily waiving his right to a trial by jury:

> The Court: Thank you, Mr. Philpot. So obviously the end game here really, for lack of a better word—and I've talked about this with [defense counsel] a couple of times—is that ideally I wanted to preserve the ability for you to appeal the decision I made on the motion to suppress. You understand that, right? . . .
>
> The Defendant: Yes, sir.
>
> [. . . .]
>
> The Court: All right. And do you, just to make abundantly clear, do you waive your right to a trial by jury and request that I, the Court, try all the charges against you in this case without a jury?
>
> The Defendant: Yes.

Bench Trial Tr., *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Sept. 21, 2021), ECF No. 74 at 4:3–11, 5:6–10. Defense counsel also confirmed that the decision to proceed by bench trial was a calculated strategic decision "to preserve [Movant's] right to appeal the Court's denial of his motion to suppress," *id.* at 9:16–17, and Movant agreed that he "had a chance to discuss the entire strategy" with defense counsel and that he was "fully satisfied with the decision to go forward in this matter in a bench trial and with all the representation and [advice] given" by defense counsel, *id.* at 10:3–9. At the conclusion of the bench trial, the Court adjudged Movant to be guilty and imposed an 84-month sentence. *See* Judgment, *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Aug. 5, 2021), ECF No. 62 at 1–2.

Movant appealed his conviction to the United States Court of Appeals for the Eleventh Circuit. *See* Notice of Appeal, *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Aug. 6, 2021), ECF No. 63. Consistent with the arguments he made below, Movant's sole argument on appeal

was that this Court erred in denying his motion to suppress.  *See Philpot*, 2022 WL 1537988, at *1.  The Eleventh Circuit affirmed on May 16, 2022, holding that "[Movant's] initial encounter with Detective McConnell was consensual under binding precedent" and, during the course of conversation, "reasonable grounds to detain Philpot had arisen on suspicion that he was carrying a concealed weapon in violation of Florida law."  *Id.* at *3.  After his appeal concluded, Movant timely filed the instant Motion on April 15, 2023.[1]  *See* Mot. at 36; *see also* Resp. at 1 n.1 ("As an initial matter, the government agrees that Philpot's Motion is timely.").

## **STANDARD OF REVIEW**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited. A prisoner is only entitled to relief under § 2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  Thus, relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice."  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)).  If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside shall discharge the prisoner or resentence him or grant a new trial or correct the sentence."  28 U.S.C. § 2255(b).  The § 2255 movant "bears the burden to prove the claims in his § 2255 motion."  *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015).

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a postconviction movant has pled guilty to the underlying offenses, the prejudice prong is modified so that the movant is instead required to "show that there is a reasonable probability that, but for counsel's errors, he would not

Page **6** of **17**

have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## ANALYSIS

Movant raises two grounds for relief in his Motion. First, Movant claims that "[d]efense counsel was ineffective for [failing] to subject the government's case to the adversary test." Mot. at 5. Movant explains that counsel's investigation prior to the motion to suppress hearing was insufficient because counsel never "conducted an investigation of why there was no body cams turned on to validate the chain of event by the officers" or "interview[ed] any potential witnesses at the casino . . . to validate the merit of the stops." *Id.* at 7 (errors in original). Second, Movant asserts that counsel performed ineffectively when he had Movant "waive his rights [sic] to a jury trial . . . to preserve his Suppression Hearing finding for appeal." *Id.* at 32. Movant's current position is that it was unreasonable for counsel to advise him to waive his right to a jury trial because "the prosecutor would have to convince all twelve members [of a jury] of his guilt whereas with a bench trial the judge is the only person that decides as to the guilt of the defendant." *Id.* at 33. The Court finds that both claims are meritless and should be denied.

### A. Ground One

In Ground One of the Motion, Movant alleges that his attorney "did not conduct any type of investigation but only relied on the government's case." *Id.* at 7. In Movant's view, defense counsel did not meaningfully challenge the testimony of the two officers who testified at the suppression hearing—Detective McConnell and Detective McGillicuddy. Movant posits that defense counsel should have "conducted an investigation as to why there was no body cams turned on to validate the merits of the chain of events" and that he was required to interview other potential witnesses at the casino who may have witnessed this encounter. *Id.*; *see also id.* at 31–32 ("Defense Attorney did not question the validity of the reason of the stop which could not be

validated but by word of mouth because none of the police officers had on body cams."). The Government responds that defense counsel vigorously cross-examined both detectives and questioned why there was no body camera footage of the encounter. *See* Resp. at 10. The Government also points out that it relied on video surveillance to corroborate the detectives' testimony at the suppression hearing. *See id.*

To begin, the Court must strictly circumscribe the scope of Ground One. Although Movant presents Ground One as an ineffective-assistance-of-counsel claim, a large percentage of the Motion is dedicated to challenging the legal conclusions made by this Court and the Eleventh Circuit in denying Movant's motion to suppress. For example, Movant insists that his interaction with Detective McConnell was not consensual since Detective McGillicuddy "walked up to the defendant and took a defiant stand behind the defendant . . . suggest[ing] [that] the petitioner was some type of criminal and he was not free to leave." Mot. at 12 (errors in original). He also claims that "[t]he detectives never had a reasonable suspicion that the Petitioner's backpack held a concealed firearm" because "[n]othing inside the Petitioner's backpack was in plain view." *Id.* at 15. The Eleventh Circuit has already held that Movant's encounter with Detective McConnell was consensual and that reasonable suspicion developed during this encounter. *See Philpot*, 2022 WL 1537988, at *3. Movant is procedurally barred from relitigating the merits of his motion to suppress in these § 2255 proceedings since these arguments have already been considered and rejected on appeal. *See Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) ("It is long settled that a prisoner is procedurally barred from raising arguments in a [§ 2255 motion] that he already raised and that we rejected in his direct appeal."). The Court's analysis of Ground One, therefore, will be limited only to Movant's assertion that, had defense counsel conducted a more complete investigation, his motion to suppress would have been granted.

As to the ineffective-assistance-of-counsel portion of Ground One, the Court agrees with the Government that Movant's allegations are completely refuted by the record. As best as the Court can tell, Movant insists that counsel could have refuted the Government's evidence at the suppression hearing by: (1) attacking the lack of body camera evidence, (2) acquiring "video of the casino [on] the day in question," and (3) interviewing "potential witnesses." Mot. at 7. None of these arguments have merit.

*First*, defense counsel <u>did</u> cross-examine Detective McConnell about why she was not wearing a body camera. *See* Suppression Hr'g Tr., *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Sept. 29, 2021), ECF No. 77 at 48:22–49:10. In any event, Movant never alleges that footage from a body-worn camera would have contradicted the testimony at the suppression hearing—only that the Court should not have taken the detectives at their word without having video proof to corroborate it. *See* Mot. at 32 (arguing that the testimony "could not be validated [by] word of mouth [alone] because none of the police officers had on body cams"). While body camera footage would have been helpful, the Court did not need it to accurately determine the credibility of the Government's witnesses. *See United States v. Parker*, 72 F.3d 1444, 1542 (10th Cir. 1995) ("As a result, the only way the [video] evidence could be 'apparently' exculpatory is if it demonstrated that . . . Trooper Bushnell . . . was lying about the events[.] Whether Trooper Bushnell was telling the truth was essentially a question of credibility for the district court.").

*Second*, the Government introduced surveillance video from the casino of the entire incident, which (contrary to Movant's arguments) was able to <u>corroborate</u> the testimony of the law enforcement witnesses. *See* Suppression Hr'g Tr., *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Sept. 29, 2021), ECF No. 77 at 14:15–15:7; *see generally id.* at 16–20, 28–35 (narrating the events which were depicted in the surveillance footage). The Eleventh Circuit also held that the surveillance video, in combination with the witness testimony at the suppression hearing, was

sufficient for this Court to deny Movant's motion to suppress. *See Philpot*, 2022 WL 1537988, at *2, *4.

*Third*, Movant's belief that there might have been some previously unidentified witness who could refute the testimony of Detectives McConnell and McGillicuddy is patently frivolous. For starters, it is unlikely that there were any other witnesses to Movant's encounter with Detective McConnell, given that both the casino's surveillance videos and Detective McConnell's testimony indicated that their conversation took place at the entrance of a comedy club that was isolated from the casino's other patrons. *See* Suppression Hr'g Tr., *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Sept. 29, 2021), ECF No. 77 at 14:10–14 ("I asked [Movant] if—because of the noise and the crowd area, I asked him, [c]an you take a few steps with me? And that's when we went into a—basically the entrance of a comedy club, but there was no comedy show going on so it was empty."). This argument is also impermissibly premised on profoundly speculative inferences. Movant is requiring the Court to assume that there <u>might</u> have been someone—in a loud and crowded casino on the eve of the Super Bowl—who saw Movant's encounter with law enforcement, was able to hear the conversation between Movant and Detective McConnell, <u>and</u> would testify that Detectives McConnell and McGillicuddy lied at the suppression hearing. *See Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) ("In a habeas petition alleging ineffective assistance of counsel, mere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." (citing *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001))). The mere hope that an undiscovered, inculpatory witness might exist is not a valid basis for relief on collateral review.

In sum, Movant has failed to show that his defense counsel was ineffective in failing to prepare for his suppression hearing. There is no evidence that additional investigation would have uncovered evidence that could contradict the testimony of the law enforcement witnesses and the

surveillance video introduced at the suppression hearing. All other arguments concerning the Court's findings at the suppression hearing are procedurally barred. Ground One is thus **DENIED**.

### B. Ground Two

Movant's second ground for relief is that defense counsel performed ineffectively "because he had petitioner to waive [sic] his rights to a jury trial[.]" Mot. at 32. A close review of Ground Two reveals that Movant is actually making two distinct arguments. *First*, Movant alleges that counsel "did not explain to [Movant] the difference between a jury and a bench trial" meaning that Movant did not knowingly and intelligently waive his right to a jury trial. *Id.* at 33. *Second*, Movant claims that defense counsel's strategy of proceeding with a bench trial was unreasonable since defense counsel could have preserved Movant's right to appeal to denial of his motion to suppress "without waiving Petitioner's right to [a] jury trial." *Id.* at 35. The Government is correct that "Philpot's allegations are without support in the record and refuted by his own testimony." Resp. at 12.

To begin, the record is clear that Movant knowingly and voluntarily waived his right to be tried by a jury. If a defendant wishes to waive his right to a trial by jury, the Constitution and Rule 23 of the Federal Rules of Criminal Procedure only require that "the defendant waives a jury trial in writing with the approval of the court and the consent of the government" and that the defendant "is aware of his jury right before waiving it and that any waiver is personal and unequivocal." *United States v. Garrett*, 727 F.2d 1003, 1012 (11th Cir. 1984) (quoting FED. R. CRIM. P. 23(a)), *superseded by statute on other grounds as recognized in United States v. Elgersma*, 929 F.2d 1538, 1544–45 (11th Cir. 1991). Movant and his defense counsel signed a "Waiver of Jury and Special Findings," where Movant agreed that he had "been fully advised in the premises" and defense counsel promised that he had "fully advised [Movant] as to the rights of an accused under the Constitution and the law to a speedy and public trial by an impartial Jury[.]" Waiver of Jury,

*United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. May 26, 2021), ECF No. 53 at 1.  This fact alone is sufficient to show that defense counsel properly advised Movant about his right to jury trial before the bench trial.  *See Adamson v. United States*, 288 F. App'x 591, 593 (11th Cir. 2008) ("Absent any claim of prejudice, there is a presumption that a defendant understandably and intelligently waived his right to a jury trial by executing a written waiver.").

But this waiver is not the only evidence in the record.  Although a trial court is not required "to engage in a colloquy with the defendant on the record to ensure that the [jury trial] waiver is voluntary, knowing, and intelligent[,]" *id.* (citing *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000)), the Court still placed Movant under oath "make sure that you [Movant] understand everything you're giving up today":

> The Court:  Have you had a chance to discuss the entire strategy that you're moving forward with today with Mr. Wilcox?
>
> The Defendant:  Yes.
>
> The Court:  And is there—or are you, rather, fully satisfied with the decision to go forward in this matter in a bench trial and with all the representation and [advice] given to you in this case by Mr. Wilcox?
>
> The Defendant:  Yes.
>
> [. . . .]
>
> The Court:  Are you proceeding with the bench trial today because it is your decision?
>
> The Defendant:  Yes.
>
> The Court:  And has anybody made any other promise or assurance of any kind in order to get you to waive your right to a jury trial or forced you to waive your right to a jury trial?
>
> The Defendant:  No.
>
> The Court:  That's very important to me.  And again, do you understand coming into court today that you could have elected to

> go forward with a jury trial but you decided not to do so; is that right?
>
> The Defendant: Yes.
>
> [. . . .]
>
> [The Court:] And just so that I'm abundantly clear, Mr. Philpot, you did get a chance to discuss all of the details of these charges, the stipulation, the waiver, and the case in general, with your lawyer before coming into court today, right?
>
> The Defendant: Yes.
>
> The Court: All right. And this is again, the defense—or your decision after discussing all defense strategy with your lawyer; is that right?
>
> The Defendant: Yes.

Bench Trial Tr., *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Sept. 21, 2021), ECF No. 74 at 9–10, 12–13.

Movant's written waiver, when viewed in tandem with the Court's colloquy of Movant, is more than enough to prove that counsel properly advised Movant about his right to a jury trial. Movant confirmed under oath that he "had a chance to discuss the entire strategy" (*i.e.*, his decision to waive his right to a jury trial) with defense counsel, that he was not forced or coerced to waive his right to a jury trial, that he understood that he had the right to demand a jury trial if he wanted to, and that he "discuss[ed] all of the details" of his waiver with defense counsel. *See id.*; *see also United States v. Dunn*, 345 F.3d 1285, 1295 (11th Cir. 2003) ("Although district courts are not required to conduct an in personam examination of the defendant to ensure that [a jury trial waiver is] knowing and voluntary, such a personal evaluation may be a valuable prophylactic measure."). These sworn representations in open court are consistent with the written waiver that Movant and his counsel executed, and both refute Movant's current claim that defense counsel did not discuss "the difference between a jury trial and bench trial" with him. Mot. at 33. In short, Movant cannot

disavow his previous statements under oath now that it is convenient for him to do so. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

The second argument in Ground Two is that counsel's strategy to have Movant waive his right to a jury trial and instead proceed by bench trial was unreasonable. It is undisputed that counsel pursued this strategy because he wanted to ensure that Movant preserved his right to challenge the denial of his motion to suppress on direct appeal. *See* Bench Trial Tr., *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Sept. 21, 2021), ECF No. 74 at 9:14–22 ("[Defense Counsel:] I just also would like to state that the parties' understanding is that Mr. Philpot is proceeding in this fashion in order to preserve his right to appeal the Court's denial of his motion to suppress. The Court: Correct. And that's really why I'm more comfortable going this route, so that we can preserve that right. The government was not willing to carve it out of a [possible] plea; this is another way to get there."). Movant asserts that consenting to a bench trial "didn't make any difference in preserving the suppression hearing," Mot. at 34, and that a jury trial would have been preferable because a jury could have acquitted Movant, *see id.* at 33. Because "counsel's conduct is presumed [to be] reasonable," Movant bears the high burden of showing that defense counsel's strategy was so abysmal that "no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315.

Counsel's strategy was plainly reasonable. To convict Movant under 18 U.S.C. § 922(g), the Government only needed to prove "that the defendant knew he possessed a firearm and that he knew he [was a convicted felon]." *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). Since two guns were found on Movant's person after he was searched by law enforcement at the casino, Movant's <u>only</u> realistic hope of securing an acquittal was to suppress the results of this search.

When that failed, Movant had three options left: plead guilty, proceed to a jury trial, or consent to a bench trial. But entering a guilty plea would not have been a viable choice for Movant since the Government was not willing to let Movant plead guilty <u>and</u> preserve his right to appeal the denial of his motion to suppress. *See* Bench Trial Tr., *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Sept. 21, 2021), ECF No. 74 at 9:21–22 ("[The Court:] The government was not willing to carve [the appeal of the motion to suppress] out of a [possible] plea[.]"). This left a jury trial and a bench trial as the only ways forward for Movant.

The Court agrees with the Government that waiving a jury trial and consenting to a bench trial was a reasonable strategic decision. Counsel was able to secure "a two-level sentencing reduction" under the Sentencing Guidelines—which resulted in a shorter overall sentence for Movant—by proceeding via uncontested bench trial. Resp. at 12–13. As defense counsel persuasively explained during Movant's sentencing, a bench trial was the only way Movant's offense level could be reduced under § 3E1.1 of the Sentencing Guidelines while also preserving Movant's right to appeal. *See* Sentencing Hr'g Tr., *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. Sept. 21, 2021), ECF No. 75 at 15 ("[Defense Counsel:] We filed a motion to suppress. We wanted to plea with a condition to plea. That wasn't available to him. We had to have a real trial. So, you know, he should get the benefit of acceptance of responsibility."); *see also* U.S.S.G. § 3E1.1 cmt. n.2 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof . . . . [But] [i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility even though he exercises his right to a trial. This may occur, for example, where a defendant goes to trial to <u>assert and preserve issues that do not relate to factual guilt</u>[.]" (emphasis added)).

Thus, by proceeding in this manner, defense counsel rightly concluded that—even if the direct appeal failed—a bench trial would ensure that Movant received the lowest possible sentence.

This, it almost goes without saying, is an eminently reasonable strategy for any defense lawyer to pursue. *See Latimer v. United States*, No. 21-CV-2369, 2022 WL 1229308, at *5 (N.D. Ga. Jan. 11, 2022) ("On this record, counsel's strategy to have Movant accept responsibility and receive a lower sentence than he likely would have received had he proceeded to [a jury] trial was a reasonable professional decision."), *report and recommendation adopted*, 2022 WL 1225136 (N.D. Ga. Apr. 25, 2022).[2]

Ultimately, the record shows that defense counsel fully advised Movant about the differences between a jury trial and a bench trial, and that Movant knowingly waived his right to a jury trial. Further, defense counsel's decision to resolve the case via bench trial was a reasonable strategic decision. For these reasons, Ground Two is **DENIED**.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record.") (cleaned up).

---

[2] Movant maintains that waiving a jury trial was still an unreasonable strategy since he could still preserve his appellate rights while—at the same time—keeping alive the chance that a jury could acquit him. *See* Mot. at 33–35. This is an <u>unreasonable</u> argument for at least three reasons. First, since Movant's motion to suppress failed, the Government could present overwhelming and irrefutable evidence at trial that Movant possessed two firearms and that he was a convicted felon. Thus, there is no reasonable probability that a jury would have acquitted Movant at trial. *See Atwater v. Crosby*, 451 F.3d 799, 810–11 (11th Cir. 2006) (holding that a counsel's errors at trial failed to prejudice the defendant since there was "overwhelming evidence of [his] guilt"). Second, as the Court just explained, consenting to a bench trial allowed Movant to receive an offense level reduction under the Guidelines and ensured that Movant received a lesser sentence than if he had insisted on a jury trial where he would have contested the Government's evidence. Third, Movant was held in pretrial detention under 18 U.S.C. § 3142(e) during the pendency of these proceedings, so proceeding with a much quicker bench trial ensured that his direct appeal would begin as soon as possible and (ideally) limit the amount of time Movant remained incarcerated if the Eleventh Circuit found that Movant's motion to suppress should have been granted *See* Detention Order, *United States v. Philpot*, No. 20-CR-60086 (S.D. Fla. May 1, 2020), ECF No. 7.

## CERTIFICATE OF APPEALABILITY

A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a postconviction movant must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would debate either "whether the [motion] states a valid claim or the denial of a constitutional right" or "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, reasonable jurists would not find the correctness of the Court's rulings debatable. Accordingly, a COA is denied and shall not issue.

## CONCLUSION

Having carefully reviewed the record and governing law, it is

**ORDERED AND ADJUDGED** that the Motion to Vacate [ECF No. 1] is **DENIED**. All pending motions are **DENIED as moot**. Any demands for an evidentiary hearing are **DENIED**, and a certificate of appealability shall **NOT ISSUE**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, on this 17th day of July, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:   Counsel of Record

Cheston Kontras Philpot
73143-019
Edgefield Correctional Institution
Inmate Mail/Parcels
P.O. Box 725
Edgefield, SC 29824
PRO SE